**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lindsay Kahle,<br><br>    Plaintiff,<br><br>v.<br><br>Lilo Enterprises Incorporated,<br><br>    Defendant. | No. CV-24-08131-PCT-DWL<br><br>**ORDER** |

    On Friday, January 16, 2026 at 2:31 a.m., Plaintiff/Counter-Defendant Lindsay Kahle ("Kahle") filed a response (Doc. 56) to the December 3, 2025 motion for summary judgment filed by Defendant/Counter-Claimant Lilo Enterprises Inc. and Counter-Claimant Brenda Bryant (together, "the Lilo parties"). (Doc. 46.) The filing was accomplished approximately two-and-a-half hours after the deadline, which had been extended by various stipulations from the original January 2, 2026 deadline to January 15, 2026 due to "end of year holidays" and "multiple conflicting deadlines in other matters" (Doc. 49), "technical issues encountered by counsel" (Doc. 51), and "an illness encountered by counsel" (Doc. 53). The January 16, 2026 response brief exceeded the page limitation by approximately five pages, lacked appropriate citations to the record, contained typos, and omitted all exhibits. (Doc. 57 at 2.) If the Lilo parties had filed a motion to strike the response due to these errors, the likely outcome would have been that the response would have been struck and Kahle would have been given a short grace period in which to file a new response.

|   |   |
|---|---|
| 1 | Shortly after midnight on the night of the Martin Luther King, Jr. holiday, Kahle |
| 2 | filed a motion requesting leave to amend her response and a motion requesting that her |
| 3 | amended response, which shortened her original 22-page brief to a 20-page brief, be |
| 4 | permitted to exceed the page limitation by three pages. (Docs. 57, 58.) In these motions, |
| 5 | Kahle's counsel explained that she had the flu and was also having technical issues and |
| 6 | that she "sought to be as conservative as possible, seeking mere days" with her previous |
| 7 | extension requests but "underestimated the recovery time for her illness." (Doc. 57 at 3.) |
| 8 | She "worked with flu symptoms in an effort to meet the agreed January 15 deadline" but |
| 9 | her illness hampered her ability to submit a response "with appropriate editing, appropriate |
| 10 | citations to the record, or exhibits." (*Id.*) Initially, Kahle's counsel "mistakenly believed |
| 11 | that the typos and omitted exhibits could be rectified by filing a notice of errata," but then |
| 12 | she "realized the extent to which she had exceeded the page limit" and "sought to shorten |
| 13 | her brief as much as possible to comply with the page limits." (*Id.* at 2.) She "researched |
| 14 | the appropriate course to take and determined that these revisions, coupled the missing |
| 15 | exhibits and corrected citations to them, required a motion to file a corrected brief under |
| 16 | Fed. R. Civ. P. 15." (*Id.*) |
| 17 | On January 22, 2026, the Court granted Plaintiff's motions, ordered the Clerk to file |
| 18 | the lodged amended response, *sua sponte* extended the Lilo parties' deadline to file a reply |
| 19 | brief, and *sua sponte* expanded the Lilo parties' page limitation for the reply brief, |
| 20 | commensurate with the page limitation expansion granted to Plaintiff. (Doc. 60.) The |
| 21 | Clerk filed the amended response. (Doc. 61.) |
| 22 | On January 23, 2026, the Lilo parties filed a motion for reconsideration, asking the |
| 23 | Court to "reconsider its order granting Kahle's motions"— effectively requesting that the |
| 24 | Court strike the amended response—and asking that the Court "instead order Kahle to file |
| 25 | a 'corrected brief' that complies with the seventeen page limit, does not contain facts, |
| 26 | arguments, and evidence that were not presented in the Response, and that complies with |
| 27 | [all applicable rules]." (Doc. 62.) The Lilo parties assert that "[g]ranting such relief is |
| 28 | proper for four primary reasons": (1) the Court ruled on Kahle's motions before the Lilo |

parties could respond, (2) the Lilo parties were not given adequate time to meet and confer before the motions were filed, (3) no federal or local rule contemplates amended response briefs, and (4) Kahle failed to demonstrate good cause for expanding the page limitation for her brief.  (*Id.* at 2.)

Beginning with the Lilo parties' second reason—that they were not given adequate time to meet and confer before the motions were filed—the Lilo parties' motion summarizes and attaches an email exchange that took place before the motions were filed. (*Id.* at 4; Doc. 62-1.)  On January 16, 2026 at 2:35 a.m., Kahle's counsel wrote, "I continue to be very sick, thus the late and incomplete filing" and indicated an intention of filing an errata.  (Doc. 62-1 at 6.)

The remainder of the exchange occurred on January 19, 2026, which is a federal holiday, but counsel for both parties were apparently working.  The Lilo parties' counsel emailed first, at 11:19 a.m., noting dissatisfaction with the originally-filed response—"We do not believe it is appropriate to expect our client to incur the added expense of us searching through the record to try to piece together your client's exhibits as we prepare our reply . . . Additionally, Ms. Kahle's response is over 22 pages long, far exceeding the 17-page limit imposed by the local rules"—and stating  that unless Kahle agreed to "withdraw" pages 18-23 from the response, the Lilo parties would move to strike it.  (*Id.* at 5.)

Kahle's counsel responded at 3:41 p.m., stating: "Having conducted research, I believe the better approach is to seek leave to file a corrected brief.  It will correct Exhibit designations, as they are supposed to be letters for a response, correct typographical errors, and shorten the brief to 20 pages.  I also intend to bring a motion for leave to file an overlong brief.  The grounds are the large volume of facts, and the length of Lilo's brief.  If you will stipulate to these, I would be grateful.  Regardless, I want to meet our obligation under the local rules to meet and confer.  Could you please call me . . . at your earliest convenience."  (*Id.* at 4-5.)  Kahle's counsel followed up with a phone call and left a voicemail.  (*Id.* at 4.)

1    The Lilo parties' counsel responded at 4:59 p.m., contradicting a belief Kahle's
2  counsel had apparently expressed in the voicemail that the Lilo parties' filings had been
3  oversized and demanding a better rationale for why the Lilo parties should stipulate to an
4  expansion of the page limitation. (*Id.*)

5    Kahle's counsel responded at 5:33 p.m., as follows:

> I've again failed to reach you by phone. Today is my first almost normal health day since Jan 9. Typically two days and I'm better. The super flu had other ideas. While I'm grateful for the professional courtesy of the extensions, they were too short for me to recover and complete the task in a timely manner. My illness should not prejudiced [sic] because I was so sick.
>
> I have reviewed an errata versus a motion for a corrected brief. Because I am cutting the brief down and adding exhibits that were not originally included, my research indicates that the procedure is a motion for a corrected brief. If you disagree and believe an errata is correct, then please stipulate to my motion any way, to reduce the risk of an error in this regard.
>
> The facts in this case are extensive, and for that reason I expect that I will not get the brief reduced to 17 pages, as I said in my initial email. That is typically considered a grounds for a page extension. At this point, I've already cut at least 2 pages. The original brief was 22 pages (the first page having only the caption does not count). The brief is now 20 pages, but I am working for further conciseness.
>
> Please give a clear answer: Will you stipulate to or not oppose the motion for a corrected brief because of my illness? Will you stipulate or not oppose the motion for an overlong brief? I'm happy to stipulate to an extra 2 pages for your reply, if you'd like. I will file the motions this calendar day.

(*Id.* at 3.)

At 5:40, Kahle's counsel sent another email stating:

> I do not intend to file an errata. I do not intend to alter the substance of the arguments, but I have tried to make the brief more concise. I have also corrected typos. No new legal authorities are referenced. No new arguments are being made. I hope this fully answers your questions.

(*Id.* at 2-3.)

Counsel for the Lilo parties did not respond that evening, and Kahle's counsel filed the motion to amend the response at midnight that night, followed by the motion for leave to exceed page limitation, filed at 12:19 a.m. (Docs. 57 and 58, transaction receipts.)

Counsel for the Lilo parties responded the next day, expressing irritation that the motions were filed before the parties could converse on the phone. (Doc. 62-1 at 2.)

In light of the exchange between the parties over the MLK weekend, combined with the contents of the motion for reconsideration, the complaint that the Lilo parties did not have the opportunity to meet and confer appears to be beside the point. For one thing, the Lilo parties were presented with the opportunity to stipulate and did not do so. The tenor of their counsel's emails suggested that stipulation was unlikely, and the content of the motion for reconsideration confirms that the Lilo parties were not and are not willing to stipulate. This is not the typical situation where a party complains about a failure to meet and confer that states, with exasperation, "If they had just asked us, we would have agreed to it." Perhaps Kahle's counsel could have waited longer before filing the motions, but that is a double-edged sword, as the length of delay can factor against a party seeking to amend, such that a quick filing is generally preferable. At any rate, the argument that failure to meet-and-confer supports the Lilo parties' request for reconsideration appears to be a red herring.

As for the Lilo parties' contention that reconsideration is warranted because the Court granted Kahle's motions without waiting for a response, any perceived error in this regard is cured by the pending motion for reconsideration, which fully sets forth the Lilo parties' reasons for opposing the motions. The Court has given them full consideration and does not find them to be persuasive. Indeed, the Court granted Kahle's motions without waiting for full briefing because relief was so obviously warranted that further briefing was neither anticipated nor needed (and would have the effect of needlessly increasing the parties' litigation costs, which is an outcome that Rule 1 of the Federal Rules of Civil Procedure encourages courts to avoid). Kahle's counsel had the flu. We've all been there. Despite being very sick, she worked hard to try to file a response by the deadline. In hindsight, she would have been better off requesting another stipulation to extend the deadline, which the Lilo parties implied would have been acceptable to them: "Kahle does not explain why her counsel failed to simply request another extension of her deadline to file the Response pursuant to LRCiv 7.3 in lieu of working while she was ill . . . . Her failure to do so is surprising and confusing because WLC already stipulated to

extend Kahle's deadline three times (at Kahle's request) and never represented that it would decline to stipulate to any further reasonable requests for extensions." (Doc. 62 at 10-11.) However, Kahle's counsel instead attempted to meet the deadline by working while sick, realized too late she could not submit a rule-compliant brief by the deadline, submitted a noncompliant brief in the wee hours of the morning, and spent the holiday weekend working (while still sick with the flu) on a revised, shortened brief, a motion to amend, and a motion to exceed the page limitation. She was able to submit all of this before the next business day after the deadline, such that there was clearly no prejudice from the amendment. Indeed, Kahle's counsel saved the parties and the Court the trouble of resolving a motion to strike the original response, which would have resulted in the same outcome: Kahle would have had additional time to draft a revised response. At any rate, allowing the amendment has the same effect as granting a short extension of the deadline—it gave Kahle's counsel a few extra (weekend) days to work on the brief—and under the circumstances, an extension was clearly warranted.

As for the argument that no federal or local rule expressly contemplates amended briefs, this is true, but that does not prevent the Court from allowing a party to amend a brief. This is something judges routinely do as a matter of discretion and case management, often without discussion, with or without the opposing parties' consent. *See, e.g.*, *Dawkins v. Nabisco, Inc.*, 1977 WL 15382, *1 (N.D. Ga. 1977) ("The Court also hereby GRANTS the defendant Union's motion to amend its responses to the plaintiff's motion for summary judgment."); *Ellison Educ. Equip., Inc. v. Avery Elle, Inc.*, 2019 WL 2085959, *1 n.1 (S.D. Cal. 2019) ("On May 8, 2019, Defendant filed a motion to amend its reply brief. For good cause shown, the Court grants Defendant's motion to amend its reply brief.") (cleaned up); *Roberts v. Dimension Aviation*, 319 F. Supp. 2d 985, 987 (D. Ariz. 2004) ("Plaintiff sought leave to file the amended response [to Defendant's motion for summary judgment] and Defendant did not object. Plaintiff's motion for leave to amend is hereby granted."); *Kidwell Grp. LLC v. Steadfast Ins. Co.*, 2024 WL 564317, *1 (11th Cir. 2024) ("Steadfast Insurance Company's unopposed motion to amend its response to the motion to dismiss is

GRANTED."); *Johnson v. Noack*, 2018 WL 3340876, *16 (D. Or. 2018) ("Plaintiff filed an amended response to the pending motion for summary judgment and styled it as a motion to amend/correct. The Court hereby GRANTS Plaintiff's motion to amend his response and has considered the amended response herein.") (cleaned up).[1]

The cases the Lilo parties cite do not stand for the proposition that a motion to amend a response must be denied. *Jones-Rankins v. Cardinal Health Inc.*, 2011 WL 6298011 (D. Ariz. 2011), is simply a case, distinguishable on its facts, in which the judge, acting within his discretion, determined that amendment was unwarranted. So too, *Lane v. Sys. Application & Techs., Inc.*, 2015 WL 1013449 (D. Md. 2015). As for *Best W. Int'l Inc. v. I-70 Hotel Corp.*, 2012 WL 2952363, *1 (D. Ariz. 2012), that case appears to be wholly inapplicable.

In short, Kahle's counsel's illness and her efforts, through her sickness and before the next business day following the deadline, to submit a brief that corrects, at least in large part, the very issues the Lilo parties cited in their January 16, 2026 email as justification for a contemplated motion to strike are sufficient to justify allowing an amendment.

As for the Lilo parties' contention that Kahle should not have been permitted to file an amended brief—submitted before the following business day after the deadline—that contains any "facts, arguments, and evidence" not presented in the original response (Doc. 62 at 13), the Court fails to comprehend any justification for this request. The Lilo parties had not yet filed a reply brief and their counsel likely had not even begun drafting one—there has been no reliance on the original response, no possible prejudice arising from the prompt amendment request.

---

[1] Courts are less likely to grant leave to amend a response after a reply brief is filed or a significant amount of time has passed. *See, e.g.*, *McDonald v. Exeter Fin. LLC*, 2023 WL 6295180, *1 (D. Ariz. 2023) ("Plaintiff initially failed to respond to Defendant's motion to dismiss within the 14-day deadline, so the Court on its own granted Plaintiff an additional 14 days in which to respond. Plaintiff then filed a response, and Defendant filed a reply. A month after Defendant filed its reply, Plaintiff moved for leave to amend his response, but his proposed amendment is actually a wholesale rewrite of his response. This is not how civil litigation works. The rules . . . do not allow Plaintiff to rewrite his response brief once Defendant files a reply demonstrating its deficiencies.") (cleaned up); *Hunt v. Brooks Run Min. Co., LLC*, 51 F. Supp. 3d 627, 637 (S.D.W. Va. 2014) (denying request to amend where "plaintiff moved to supplement her opposition to the motion for summary judgment more than three months after the motion for summary judgment was filed").

The last argument the Lilo parties advance is that Kahle has not provided adequate justification to support the expansion of her page limitation. (Doc. 62 at 11.) But as the Lilo parties acknowledge, the Court "has considerable latitude in managing the parties' motion practice." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002). "As happened here, counsel sometimes seek modest expansions of page limitations," *Stilwell v. City of Williams*, 2013 WL 12188576, *1 (D. Ariz. 2013), and such requests are routinely granted in cases of adequate complexity. Kahle's counsel originally drafted a longer brief, then spent a holiday weekend, while sick with the flu, revising it to within a few pages of the page limitation, and then filed a motion seeking leave to file the smaller but still-oversized brief. She stated that the Lilo parties' motion for summary judgment "raises numerous legal issues, relies on a substantial factual record, and presents multiple independent arguments requiring separate analysis," noted that "[t]he substantial factual record and numerous exhibits included must be addressed in detail to demonstrate the existence of genuine issues of material fact," and explained that she "made every effort to be concise" but needed additional space "to provide the Court with a complete, helpful, and thorough response." (Doc. 58 at 2.) These reasons are adequate to justify a modest three-page expansion of the page limitation. The Lilo parties' main argument—that "[h]ad [they] been afforded three extra pages for [their] motion, [they] undoubtedly would have presented additional uncontroverted facts and argument in support of [their] motion" (Doc. 62 at 12-13)—is unavailing. The Lilo parties did not request a page expansion. Had they done so, they would have likely received one. Kahle did, and the Court, in its discretion, granted it—and *sua sponte* granted the Lilo parties a three-page expansion of the page limitation for their reply brief. The Court perceives no error in so doing.

Accordingly,

**IT IS ORDERED** that the Lilo parties' motion for reconsideration (Doc. 62) is **denied**.

Dated this 28th day of January, 2026.

Dominic W. Lanza
United States District Judge