**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Lindsay Kahle,

Plaintiff,

v.

Lilo Enterprises Incorporated,

Defendant.

No. CV-24-08131-PCT-DWL

**ORDER**

Plaintiff Lindsay Kahle ("Kahle") alleges that a co-worker harassed her because of her sex after their romantic relationship ended and that their employer, Lilo Enterprises Incorporated d/b/a Westside Lilo's Café ("Defendant"), failed to stop the harassment and ultimately terminated her in retaliation for her reporting of the harassment. Defendant and one of its owners, Brenda Bryant ("Bryant"), have, in turn, asserted counterclaims against Kahle for defamation, false light invasion of privacy, and declaratory relief.

On August 27, 2026, the Court issued an order resolving the parties' motions for summary judgment. (Doc. 67.) The Court concluded that three of Kahle's claims should survive summary judgment and that Kahle was entitled, with one narrow exception, to summary judgment on all of the counterclaims.

Now pending before the Court is Defendant's motion for reconsideration. (Doc. 70.) Defendant does not challenge the rejection of its counterclaims but argues that the Court should have granted summary judgment in its favor on all of Kahle's claims. For the reasons that follow, the motion is denied.

## LEGAL STANDARD

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). Reconsideration is an "extraordinary remedy" that is available only in "highly unusual circumstances." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) (citations omitted). *See also FTC v. Noland*, 2022 WL 901386, *3 (D. Ariz. 2022) ("Local Rule 7.2(g) . . . [creates] essentially the same standard a district court outside the District of Arizona . . . would apply when resolving a reconsideration motion under Rule 54(b).") (citations omitted); 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, § 54:17 (June 2026 update) ("Rule 54(b) is not a mechanism to get a 'do over' to try different arguments or present additional evidence when the first attempt failed. . . . [R]econsideration of an interlocutory ruling under Rule 54(b) is typically appropriate only to consider newly discovered evidence that previously was not available, to address an intervening change in the law, or to correct a clear error rendering the initial decision manifestly unjust.").

## DISCUSSION

### I. Count One

In Count One, Kahle asserts a claim under the Arizona Employment Protection Act ("AEPA"). In the August 27, 2026 order, the Court concluded, among other things, that a reasonable juror could find that Kahle engaged in protected activity by reporting that Helms had committed assault in violation of A.R.S. § 13-1203 and/or threatening or intimidating in violation of A.R.S. § 13-1202. (Doc. 67 at 18-23.)

Defendant's reconsideration argument as to Count One is narrow. (Doc. 70 at 15-17.) Defendant does not dispute that the facts Kahle reported to her supervisors were

sufficient to establish that Helms committed assault under § 13-1203 and/or threatening or intimidating under § 13-1202. Instead, Defendant argues there is insufficient evidence that Kahle *subjectively believed* this reported conduct qualified as assault and/or threatening or intimidating. (*Id.* at 16 ["[W]hether Kahle proffered evidence she reasonably *believed* Helm's [sic] conduct was unlawful is a separate inquiry from whether there is evidence she reported his conduct to [Defendant] in a reasonable manner."]; *id.* at 17 ["Because Kahle furnished no evidence that she reasonably believed Helms violated Arizona law, she cannot establish a prima facie AEPA claim. The Court's ruling is premised upon evidence of what she reported (not what she reasonably believed)."].)

This argument lacks merit. Under A.R.S. § 23-1501(A)(3)(c)(ii), "[a]n employee has a claim against an employer for termination of employment only if . . . [t]he employer has terminated the employment relationship of an employee in retaliation for . . . [t]he disclosure by the employee in a reasonable manner that the employee *has information or a reasonable belief* that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state . . . ." *Id.* (emphasis added). As the italicized text makes clear, the test is disjunctive—the plaintiff must disclose either "information" or "a reasonable belief" that an employee has violated Arizona law. *McKee v. State*, 388 P.3d 14, 18 (Ariz. Ct. App. 2016) ("Under canons of statutory construction, we read the 'or' separating 'approving' and 'extending the duration' to be disjunctive. Thus, we read the language of subsection F as simply requiring appropriate agency action approving (1) the agreement, or (2) the duration of any extension of the agreement.") (citation omitted). Thus, so long as the information Kahle disclosed to her supervisors was sufficient to show that Helms had violated Arizona law—and, as discussed above, Defendant does not dispute that it was sufficient—it is irrelevant whether Kahle subjectively believed she had disclosed such a violation. *See also Seballos v. Freeport-McMoRan, Inc.*, 2023 WL 5624716, *2 (Ariz. Ct. App. 2023) ("To prove retaliation under § 23-1501(A)(3)(c)(ii), a plaintiff must show he has disclosed, based on information *or* a reasonable belief, that the employer has, is, or will violate the Arizona

Constitution or an Arizona statute.") (emphasis added); *Gonzalez v. US Hum. Rts. Network*, 617 F. Supp. 3d 1072, 1082 (D. Ariz. 2022), *aff'd*, 2026 WL 382043 (9th Cir. 2026) ("[T]o prevail on a claim under [A.R.S. § 23-1501(A)(3)(c)(ii)] . . . , [the plaintiff] must establish [that] she had information *or* a reasonable belief that her employer or another employee had violated an Arizona statute or constitutional provision . . . .") (cleaned up, emphasis added); RAJI (Civil) Employment Law 7 (7th ed.) ("On this claim, [he or she] has the burden of proving: 1. [Name of employee] had information *or* a reasonable belief that [name of employer] or an employee of [name of employer], had violated or was violating, or would violate the constitution of Arizona or the statutes of this State . . . .") (emphasis added).

In an effort to show otherwise, Defendant resorts to misquoting the statutory language. Defendant argues: "[T]he AEPA requires both evidence of 1) the employee's 'reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate an Arizona statute or the Arizona constitution and 2) 'a disclosure by the employee [of that belief] in a reasonable manner . . . to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information.'" (Doc. 70 at 16.) The first part of this formulation is misleading because, as noted above, the actual statutory language is that "the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state." A.R.S. § 23-1501(A)(3)(c)(ii). In other words, Defendant has attempted, through deceptive editing, to transform the statutory phrase "the employee has information or a reasonable belief" into the phrase "the employee's 'reasonable belief.'"

II. <u>Count Two</u>

In Count Two, Kahle asserts a hostile work environment claim under Title VII. In the August 27, 2026 order, the Court concluded, among other things, that a reasonable juror could find that Helms's alleged harassment of Kahle was based on sex, as opposed to being

based on personal animosity arising from a failed relationship (Doc. 67 at 37-42) and that the alleged harassment was severe or pervasive (*id.* at 43-46). The Court also observed that although "both parties appear to operate from the misimpression that the only harassment for which Defendant may be held liable is that which occurred after Kahle's first report to management on March 28, 2023," the rule in the Ninth Circuit is that "[w]hen the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment." (*Id.* at 47, emphasis omitted, quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 875-76 (9th Cir. 2001)).

Defendant identifies five reasons why the Court should reconsider the denial of summary judgment as to Count Two. First, Defendant argues that because its summary judgment motion argued that Helms's harassment was not sex-based, and Kahle's response brief failed to specifically address this argument in relation to Count Two, the Court should have automatically granted summary judgment in its favor on Count Two based on waiver/forfeiture principles. (Doc. 70 at 5.)

This argument is unavailing. As an initial matter, even if Kahle had entirely failed to respond to Defendant's arguments concerning whether the harassment was sex-based, this would not mean that Defendant was automatically entitled to summary judgment. The current version of Rule 56 "prohibit[s] the grant of summary judgment by default even if there is a complete failure to respond to the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (cleaned up).

In any event, although Kahle's response brief could have (and perhaps should have) responded more directly to Defendant's arguments as to whether the harassment underlying Count Two was sex-based, her brief did address that issue. Among other things, Kahle argued: "Defendant also claims that Kahle's report conveyed only an interpersonal conflict subsequent to a break-up, and not gender-based harassment. This argument fails. By necessity, Helms'[s] misconduct was directed at Kahle because, in addition to being an ex-girlfriend, Kahle was a woman. James'[s] testimony supports this argument, because

Helms had anger toward women in particular, and he focused that on Kahle. Thus, Kahle's complaints provide enough information that Helms'[s] conduct was motivated by sex and prohibited under Title VII." (Doc. 61 at 17. *See also id.* at 15 ["Kahle continued to suffer a hostile work environment and harassment because of her sex . . . ."].) This was sufficient to avoid any claim of forfeiture/waiver, even if the argument appeared in the portion of Kahle's response brief addressing Count Three.

Second, Defendant argues that the Court improperly justified the denial of summary judgment based on evidence and cases Kahle did not cite, thereby depriving Defendant of the ability to respond (and violating the party-presentation principle). (Doc. 70 at 5-7.) This argument is unpersuasive. Every piece of challenged evidence was submitted by the parties as an attachment to a summary judgment brief. The Court was permitted to consider all of that evidence when deciding whether any party was entitled to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").[1]

Nor did the Court somehow err by citing cases the parties failed to cite in their briefs. Indeed, the August 27, 2026 order noted that the facts of this case are "nearly identical" to those in *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225 (1st Cir. 2007). (Doc. 67 at 39-40.) In its reconsideration motion, Defendant somewhat conspicuously does not argue that the Court's interpretation of *Forrest* was wrong. In fact, Defendant does not mention *Forrest* at all. Instead, Defendant's position appears to be that because neither side cited *Forrest*, and despite it being nearly identical to this case, the Court should have ignored it. But this misunderstands the judicial role. "[I]t is a longstanding principle that when an issue or claim is properly before the court, the court is not limited to the particular legal

[1] The Court notes that Defendant's objection on this point is particularly unpersuasive given Defendant's failure, during the summary judgment briefing process, to clearly identify the challenged statements underlying its affirmative defamation and false light claims. (Doc. 55 at 9 [arguing that Kahle "made numerous false statements implying an assertion of objective fact, including but not limited to" certain statements]; Doc. 67 at 9, 66.) Suffice it to say, neither side covered itself in glory during the summary judgment briefing process, which greatly complicated the Court's task in ruling on each side's motion.

theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Does v. Wasden*, 982 F.3d 784, 793 (9th Cir. 2020) (cleaned up). "[T]he cases relied on by the parties are, of course, not the only authority that a court can or should consider in reaching its decision. . . . [A] court may consult cases not cited by the parties." *Chicas-Machado v. Garland*, 73 F.4th 261, 267 n.3 (4th Cir. 2023).

Third, Defendant argues that the Court improperly relied on James's testimony when denying summary judgment as to Count Two, both because "James never worked with both Kahle and Helms at the same time" and because James's testimony "is entirely based upon hearsay." (Doc. 70 at 7-8.) The timing issue is a red herring because the August 27, 2026 made clear that the "evidence that Helms used gendered epithets to describe women" included Kahle's own testimony on that point. (Doc. 67 at 41.) Thus, James's testimony that she also "heard Helms call women 'whores and sluts and cunts'" (*id.*) was not central to the outcome—it simply tended to corroborate Kahle's own testimony, and corroboration is not necessary to survive summary judgment. Although the analysis could end there, Defendant's hearsay objection is also meritless. The August 27, 2026 order obviously did not cite James's testimony to prove the truth of what Helms allegedly said about women, but simply to establish that Helms uttered those words.

Fourth, Defendant argues that the evidence was insufficient to establish that the harassment was severe or pervasive. (Doc. 70 at 8-10.) But this argument is simply a rehash of the same argument the Court considered and rejected in the August 27, 2026 order. (Doc. 67 at 43-46.) "Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola*, 215 F.R.D. at 582. The Court also notes that Defendant conspicuously does not cite, let alone seek to distinguish, *Ochs v. Eugene Emeralds Baseball Club, Inc.*, 774 F. App'x 1026 (9th Cir. 2019), even though the Court relied heavily on *Ochs* in the August 27, 2026 order and took pains to explain why it supports the denial of summary judgment on this record.[2]

---

[2] As part of its argument regarding the severe-or-pervasive requirement, Defendant also faults the Court for citing evidence that was part of the summary judgment record but

Fifth, Defendant argues that because both sides stated in their summary judgment briefs that Defendant may only be held liable for conduct that occurred after Kahle first reported Helms's conduct to Bryant on March 28, 2023, the Court was bound to accept this statement as true—and, thus, the Court erred by "sua sponte" observing that Defendant may be liable for all of Helms's harassing conduct dating back to October 2022. (Doc. 70 at 10-12.) This argument has no merit. As the August 27, 2026 order explained, the rule in the Ninth Circuit is that "[w]hen the employer undertakes no remedy, or where the remedy does not end the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment." (Doc. 67 at 47, emphasis omitted, quoting *Nichols*, 256 F.3d at 875-76.) Defendant does not cite *Nichols* or contend that the Court's statement of the law was wrong. Instead, Defendant's position appears to be that the Court was required to accept the parties' mistaken view of the law. But as discussed above, the Court "retains the independent power to identify and apply the proper construction of governing law." *Does*, 982 F.3d at 793. "[P]arties cannot waive the application of the correct law or stipulate to an incorrect legal test." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018).

III. Count Three

In Count Three, Kahle asserts a retaliation claim under Title VII. In the August 27, 2026 order, the Court concluded, among other things, that "[a] reasonable juror could conclude that Kahle reported sex-based harassment by Helms to Defendant, thus engaging in a Title VII protected activity" (Doc. 67 at 54), and that a reasonable juror could find a causal connection between Kahle's protected activity and her termination due to the temporal proximity between the two events (*id.*)

Defendant identifies two reasons why the Court should reconsider the denial of summary judgment as to Count Three. First, as for whether Kahle engaged in protected activity, Defendant faults the Court for relying "on arguments and deposition testimony

---

that Kahle did not specifically cite in her response brief. (Doc. 70 at 9-10.) This criticism is foreclosed by Rule 56(c)(3) for the reasons stated above.

[Kahle] did not raise/cite" and further contends that Kahle admitted that she never reported being the victim of sex-based harassment (or, at most, made contradictory statements on that topic). (Doc. 70 at 12-13.)

The former argument is a non-starter for the reasons discussed above. *See* Fed. R. Civ. P. 56(c)(3). As for the latter argument, the relevant testimony is as follows. When Kahle was asked whether she ever "utilized the word 'discrimination'" when reporting Helms's conduct to Bryant, she answered: "No. I did tell her—when I reported [Helms] was harassing me, I said that he was sexist and, like, attacking me because I was a woman. . . . I told her that he had sexist tendencies, the slut, all that." (Doc. 61 at 202 [deposition page 152].) Soon afterward, counsel asked this follow-up question: "I believe you testified earlier that you didn't utilize the word 'harassed' in your meeting with Ms. Bryant. Is that correct?" (*Id.* at 203 [deposition page 153].) Kahle responded "Yeah." (*Id.*) Counsel then stated: "I just want to clarify that you reported that you 'had been retaliated against because of her sex,' those are not your words. Is that fair?" (*Id.* at 205 [deposition page 155].) Kahle responded: "Those are not my words. I would say that they couldn't have a opinion of my—it can't just be, like, as simple as because of my sex. It started with my sex. Like, only a woman could have pissed them off in regards to [Helms]. Like, this personal feeling they had towards me was because they had felt that I had manipulated him because I was older or lied to him or whatever. That comes from me, like, being a woman and him being a man and our romantic relationship. So not those exact words, but it starts with me being a woman and then dating [Helms]." (Doc. 46-1 at 69-70 [deposition pages 155-56].) Finally, a bit later during her deposition, Kahle answered "No" when asked whether she "report[ed] to anyone at the café that you believed you were being treated differently because you are a woman." (*Id.* at 75 [deposition page 166].)

Given this backdrop, the Court stands by its determination in the August 27, 2026 order that a reasonable juror could find that Kahle engaged in Title VII protected activity. Although Kahle never made a formal, lawyerly assertion to Bryant that she felt she was being harassed because of her sex, she did report to Bryant that Helms was a sexist, with

sexist tendencies, who was attacking her because she was a woman. A reasonable factfinder could conclude that this statement amounted to protected activity, i.e., reporting sex-based harassment. *Cf. Kitchen v. WSCO Petroleum Corp.*, 481 F. Supp. 2d 1136, 1145 (D. Or. 2007) ("An employee complaining of a violation of Title VII need not utter the magic words Title VII to put an employer on notice of unlawful discrimination. While complaining to McCarry about Sorn, Kitchen told him that he found Sorn's sexual remarks towards female employees to be crude and vulgar, and that Sorn's behavior had to stop. That language is sufficiently strong to be deemed an opposition to Sorn's conduct and to put McCarry on notice of unlawful gender discrimination. Therefore, it is protected activity.") (cleaned up).

Second, Defendant argues that the Court's causation analysis was flawed because "temporal proximity alone cannot establish causation." (Doc. 70 at 14, cleaned up.) Defendant appears to be conflating what is required to show *prima facie* causation with what is required to show pretext. Under the *McDonnell Douglas* burden-shifting framework, "an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination (or retaliation). The burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action. If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Curley v. City of N. L.V.*, 772 F.3d 629, 632 (9th Cir. 2014). As the Court explained in the August 27, 2026 order, "very close *temporal proximity* between a protected activity and an adverse employment action *can be sufficient evidence of a causal link* between the two *to support a prima facie showing* of retaliation." (Doc. 67 at 24, emphases added, quoting *Curley*, 772 F.3d at 634.) The Ninth Circuit thereafter clarified that "*Curley* illustrates that when temporal proximity cuts both ways—*i.e.,* an adverse action follows on the heels of *both* a protected activity *and* an independent reason for adverse action—it might not be enough *standing alone* to establish *pretext*." (*Id.* at 24-25, emphases added, quoting *Kama v. Mayorkas*, 107 F.4th 1054, 1059-60 (9th Cir. 2024).) Thus, the August 27, 2026 order

concluded that "Kahle ha[d] established prima facie causation (based, at a minimum, on temporal proximity)"; that "Defendant ha[d] come forward with a legitimate, non-discriminatory reason for terminating Kahle"; and that "Kahle had raised a genuine dispute as to whether Defendant's proffered reason for terminating her was pretextual." (*Id.* at 54 [incorporating pretext arguments from AEPA analysis]. *See also id.* at 25-28 [analyzing Kahle's evidence, other than temporal proximity, supporting pretext].).

Accordingly,

**IT IS ORDERED** that Defendant's reconsideration motion (Doc. 70) is **denied**.

**IT IS FURTHER ORDERED** that the lawyers shall confer (among themselves and with their respective clients and witnesses) and, by September 30, 2026, file a joint notice indicating an estimated length of trial. In the joint notice, the parties shall also propose at least three dates on which they and their witnesses will be available to begin trial in or after January 2027.

Dated this 16th day of September, 2026.

Dominic W. Lanza
United States District Judge